# EXHIBIT 1

McDOWELL MOUNTAIN
JUSTICE COURT
FILED

16 AUG 29 AM 8: 52

**MCCARTHY LAW PLC**

CANDID CONVERSATION. WISE COUNSEL.

Kevin Fallon McCarthy, 011017
Joon N. Kee, 028152
Devan E. Michael, 032803
4250 North Drinkwater Blvd, Suite 320
Scottsdale, AZ 85251
602-456-8900
devan.michael@mccarthylawyer.com
joon.kee@mccarthylawyer.com
Attorneys for Plaintiffs

## McDOWELL MOUNTAIN JUSTICE COURT
## MARICOPA COUNTY, STATE OF ARIZONA
18380 NORTH 40TH STREET, PHOENIX, ARIZONA 85032

KIMBERLY SPROTT,

    Plaintiffs,

v.

SPECIALIZED LOAN SERVICING, LLC
AND EXPERIAN INFORMATION
SOLUTIONS, INC.,

    Defendants.

Case No.: CC2016154186

**COMPLAINT FOR VIOLATION OF FAIR CREDIT REPORTING ACT (15 U.S.C. § 1681 et seq.)**

COMES NOW Plaintiff, KIMBERLY SPROTT ("Plaintiff"), by and through counsel undersigned, and for her cause of action against the Defendants above-named alleges as follows:

1.     That, on information and belief, Defendant, SPECIALIZED LOAN SERVICING, LLC ("SPECIALIZED"), is, and at all times relevant hereto was, a Foreign Corporation authorized to do business in Arizona and has designated the following registered statutory agent: CT CORPORATION SYSTEM, 3800 NORTH CENTRAL AVENUE, SUITE 460, PHOENIX, ARIZONA 85012.

2.     That, on information and belief, Defendant, SPECIALIZED, is, and at all times relevant hereto was, regularly doing business in the State of Arizona.

3.     That, on information and belief, Defendant, EXPERIAN INFORMATION SOLUTIONS, INC. ("EXPERIAN"), is a credit reporting agency, as defined by 15 U.S.C. § 1681a(f), licensed to do business in Arizona and has designated the following registered statutory agent: CT CORPORATION SYSTEM, 3800 NORTH CENTRAL AVENUE, SUITE 460, PHOENIX, ARIZONA 85012.

Sprott v. Specialized Loan Servicing, LLC. et al.1           COMPLAINT

1        4.      That, on information and belief, Defendant, EXPERIAN, is, and at all times relevant

2    hereto was, regularly doing business in the State of Arizona.

3        5.      That the Court has jurisdiction over this action pursuant to 15 U.S.C. § 1681p, the

4    Fair Credit Reporting Act ("FCRA") and that personal jurisdiction exists over Defendant as it had

5    the necessary minimum contacts with the State of Arizona and this suit arises out of its specific

6    conduct with Plaintiff in Arizona. All the actions described in this suit occurred in the State of

7    Arizona.

8        6.      That on or about February 23, 2006, Plaintiff entered into a security agreement with

9    Valley Mortgage & Investment, Inc. ("Valley Mortgage") to purchase the property in Maricopa

10   County, Arizona, specifically located at 7650 East Fledgling Drive, Scottsdale, Arizona 85255

11   ("Residence"). Valley Mortgage respectively secured their interest through a Deed of Trust.

12   Exhibit A.

13       7.      That on or about August 12, 2010, Valley Mortgage assigned their rights under the

14   Deed of Trust to U.S. Bank National Association ("U.S. Bank") as Trustee relating to Chevy Chase

15   Funding LLC Mortgage Backed Certificates c/o SPECIALIZED. That upon information and belief,

16   SPECIALIZED is the servicing agent for U.S. Bank. Exhibit B.

17       8.      That the SPECIALIZED account begins in 100469xxxx ("Account").

18       9.      That on or about August 16, 2010, Christopher Charles Rebhuhn c/o Regional

19   Trustee Services Corporation set a Trustee's Sale for November 16, 2010 at 12:00 PM in the

20   courtyard, by the main entrance of the Superior Court Building, 201 West Jefferson, in the City of

21   Phoenix, County of Maricopa, Arizona. Exhibit C.

22       10.    That the Trustee Sale did occur on November 16, 2010 on the Residence, and a

23   Trustee's Deed was issued. Exhibit D.

24       11.    That the Plaintiff is a consumer and victim of inaccurate credit reporting by

25   Defendants as Plaintiff's credit report shows the Account as reporting a foreclosure in November

26   2015, when the actual date of foreclosure was November 2010.

27

28

MCCARTHY LAW, PLC
4250 N. DRINKWATER BLVD
SUITE 320
SCOTTSDALE, ARIZONA 85251
602.456.8900

Sprott v. Specialized Loan Servicing, LLC. et al.2                      COMPLAINT

1    12.    That the Defendant SPECIALIZED is willfully reporting derogatory and inaccurate

2  information about Plaintiff to one or more consumer reporting agency ("CRAs") as defined by 15

3  U.S.C. § 1681a.

4    13.    That the Defendant EXPERIAN is willfully reporting derogatory and inaccurate

5  information about Plaintiff to third-parties.

6    14.    That on April 4, 2016, Plaintiff sent a written dispute to the Defendant EXPERIAN,

7  with supportive documentation, regarding the accuracy of the derogatory information reported by

8  the Defendant SPECIALIZED pertaining to Account on Defendant EXPERIAN's credit report.

9  Exhibit E.

10    15.    That Defendant SPECIALIZED willfully failed to correct the inaccurate reporting

11  of the Account to the Defendant EXPERIAN in violation of 15 U.S.C. § 1681s-2 and to the

12  detriment of the consumer Plaintiff. Exhibit F.

13    16.    That the Defendant EXPERIAN has failed to correct the inaccurate reporting of the

14  Account in violation of FCRA § 1681i and to the detriment of the consumer Plaintiff. Exhibit F.

15    17.    That the Defendant EXPERIAN willfully failed to maintain reasonable procedures

16  to assure maximum accuracy of the information contained in Plaintiff's credit report in violation

17  of 15 U.S.C. § 1681e.

18    18.    That the foregoing acts and omissions of the Defendants constitute unacceptable

19  violations of the FCRA.

20    19.    As a result of the foregoing, Plaintiff has suffered damages in an amount to be

21  shown at trial, but not exceeding $10,000.

22    **WHEREFORE,** Plaintiff seeks a reasonable and fair judgment against Defendants for

23  willful noncompliance of the Fair Credit Reporting Act and seeks her statutory remedies as

24  defined by 15 U.S.C. § 1681n and demands:

25    1. Actual damages to be proven at trial, or statutory damages pursuant to 15 U.S.C. §

26    1681n(a)(1)(A), of not less than $100 and not more than $1,000 per violation;

27    2. Punitive damages, pursuant 15 U.S.C. § 1681n(a)(2), for Defendants' willful

28    violation;

MCCARTHY LAW, PLC
4250 N. DRINKWATER BLVD
SUITE 320
SCOTTSDALE, ARIZONA 85251
602-456-8900

Sprott v. Specialized Loan Servicing, LLC. et al.3                    COMPLAINT

3. The costs of instituting this action together with reasonable attorney's fees incurred by Plaintiffs pursuant to 15 U.S.C. § 1681n(a)(3); and

4. Any further legal and equitable relief as the court may deem just and proper in the circumstances.

Respectfully submitted this 25th day of August, 2016.

MCCARTHY LAW, PLC

By: _____

Devan E. Michael, Esq.
Kevin Fallon McCarthy, Esq.
Joon N. Kee, Esq.
Attorneys for Plaintiff

MCCARTHY LAW, PLC
4250 N. DRINKWATER BLVD
SUITE 320
SCOTTSDALE, ARIZONA 85251
602.456.8900

Sprott v. Specialized Loan Servicing, LLC. et al. 4                    COMPLAINT

# EXHIBIT A

Unofficial Document

40
ho

Recording Requested By:
VALLEY MORTGAGE & INVESTMENT,
INC. (FN)

And After Recording Return To:
VALLEY MORTGAGE & INVESTMENT, INC. (FN)
2020 EAST KIMBERLY ROAD
DAVENPORT, IOWA 52807
Loan Number: 0556008910
    LAND TITLE AGENCY

40027856 -15 / ———————[Space Above This Line For Recording Data] ———————

## DEED OF TRUST

MIN: 1002930-0556008910-7

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated FEBRUARY 23, 2006 , together with all Riders to this document.
(B) "Borrower" is KIMBERLY SPROTT, A SINGLE PERSON

Borrower is the trustor under this Security Instrument. Borrower's mailing address is 7650 EAST FLEDGLING DRIVE, SCOTTSDALE, ARIZONA 85255

(C) "Lender" is VALLEY MORTGAGE & INVESTMENT, INC. (FN)

Lender is a ILLINOIS CORPORATION                                                  organized
and existing under the laws of ILLINOIS
Lender's mailing address is 14614 N. KIERLAND BLVD SUITE 290, SCOTTSDALE, ARIZONA 85254

(D) "Trustee" is
            LAND TITLE AGENCY OF ARIZONA

Trustee's mailing address is
                    14614 N. KIERLAND BLVD SUITE 290,
                    SCOTTSDALE, ARIZONA 85254
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                    Page 1 of 14                    DocMagic ℮Forms 800-649-1362
                                                                              www.docmagic.com

(F) "Note" means the promissory note signed by Borrower and dated **FEBRUARY 23, 2006**
The Note states that Borrower owes Lender **SIX HUNDRED SEVEN THOUSAND SEVEN
HUNDRED AND 00/100** Dollars (U.S. $ **607,700.00** ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
**MARCH 1, 2046**

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider
[ ] Balloon Rider    [ ] Planned Unit Development Rider    [ ] Other(s) [specify]
[ ] 1-4 Family Rider    [ ] Biweekly Payment Rider

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they may be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
           **COUNTY**      of            **MARICOPA**
        [Type of Recording Jurisdiction]           [Name of Recording Jurisdiction]

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)      Page 2 of 14      DocMagic eFurms 800-649-1362
www.docmagic.com

LOT 61A, OF A REPLAT OF A PORTION OF GRAYHAWK PARCEL 2A, 2B, 2C, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED IN BOOK 502 OF MAPS, PAGE 6.  EXCEPT ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES, HELIUM OR OTHER SUBSTANCES OF A GASEOUS NATURE, COAL, METALS, MINERALS, FOSSILS, FERTILIZER OF EVERY NAME AND DESCRIPTION AND EXCEPT ALL URANIUM, THORIUM OR ANY OTHER MATERIAL WHICH IS OR MAY BE DETERMINED TO BE PECULIARLY ESSENTIAL TO THE PRODUCTION OF FISSIONABLE MATERIALS WHETHER OR NOT OF COMMERCIAL VALUE, AS SET FORTH IN SECTION 37-231, A.R.S. A.P.N.: 212-36-898

which currently has the address of   7650 EAST FLEDGLING DRIVE

[Street]

SCOTTSDALE                   , Arizona         85255      ("Property Address"):

[City]                                         [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3.  Payments due under the Note and this Security Instrument shall be made in U.S. currency.  However, if any check or other instrument received by Lender as payment under the Note and this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15.  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds.  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure.  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                          Page 3 of 14

DocMagic CFSERVICE 800-649-1362
www.docmagic.com

Az3003.mzd

under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

Ar3003.zml

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                              Page 6 of 14                              DocMagic eForms 800-649-1362
                                                                                                 www.docmagic.com

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may

attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to, (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

20060268677

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in




this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. These conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

A3003.md

20060268677

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)
Page 11 of 14

DocMagic eForms 800-649-1362
www.docmagic.com

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Time of Essence. Time is of the essence in each covenant of this Security Instrument.

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)
Page 12 of 14

DocMagic eForms 800-649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Kimberly Sprott_____ (Seal)
KIMBERLY SPROTT                        -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

Witness:                           Witness:

_____   _____

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                          Page 13 of 14

DocMagic eForms 800-649-1362
www.docmagic.com

State of Arizona
County of MARICOPA

The foregoing instrument was acknowledged before me this
by KIMBERLY SPROTT

February 23, 2006

Signature of Person Taking Acknowledgment

Title

Serial Number, if any

My commission expires:

Unofficial Document

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)
                                                    Page 14 of 14
                                                                    DocMagic eForms 800-649-1362
                                                                    www.docmagic.com

Ac3003.xml

MIN: 1002930-0556008910-7          Loan Number: 0556008910

# ADJUSTABLE RATE RIDER
## (2 Year Payment Option/1 Month LIBOR Index/Payment and Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this   23rd   day of   FEBRUARY
2006          , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned
(the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to      VALLEY
MORTGAGE & INVESTMENT, INC. (FN), AN ILLINOIS CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

7650 EAST FLEDGLING DRIVE, SCOTTSDALE, ARIZONA 85255
[Property Address]

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY
INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT
INCREASES AND DECREASES MAY BE LIMITED AND MY INTEREST RATE
INCREASES ARE LIMITED. THE PRINCIPAL AMOUNT TO REPAY COULD BE
GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE
THAN THE LIMIT STATED IN THE NOTE. A BALLOON PAYMENT MAY BE DUE
AT MATURITY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## 2. INTEREST
### (A) Interest Rate
Interest will be charged on unpaid principal until the full amount of principal has been paid. Until
the   1st   day of the calendar month that immediately precedes the first payment due date set forth in
Section 3 of the Note, I will pay interest at a yearly rate of    6.990 %. Thereafter, until the first
Interest Change Date (as defined in Section 2(B) below), I will pay interest at the yearly rate of
1.350 %.                              Uncialed Document
The interest rate I will pay may change.
    The interest rate required by this Section 2 is the rate I will pay both before and after any default
described in Section 7(B) of the Note.
### (B) Interest Rate Change Dates
The interest rate I will pay may change further on the   1st   day of APRIL
2006          , and on that day every month thereafter. Each date on which my interest rate could
change is called an "Interest Rate Change Date." The new rate of interest will become effective on each
Interest Rate Change Date.
### (C) Interest Rate Limit
My interest rate will never be greater than    19.900 %.

**(D) The Index**

Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index. The "Index" is the one month London Interbank Offered Rate (LIBOR) as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day after the twenty-fifth day of the month immediately preceding the month in which the Interest Rate Change Date occurs is called the "Current Index."

If the Index or any Index previously substituted under this Section 2(D) is no longer available, or is otherwise unpublished, the Note Holder may choose a new Index and a new Margin to result in a rate similar to the rate in effect at that time which is based upon comparable information. The Note Holder will give me notice of this choice.

**(E) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 450/1000                    percentage points (          2.450 %) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the interest rate limit stated in Section 2(C) above, the rounded amount will be my new interest rate (the "Fully Indexed Rate") until the next Interest Rate Change Date.

## 3.   PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month. I will make my monthly payments, as described in Sections 3(B) through (F) below, on the  1st    day of each month, but no sooner than thirty (30) days before such payment's due date, beginning on APRIL 1, 2006          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under the Note. My monthly payments will be applied to interest before principal. If, on  MARCH 1, 2046           , I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will make my monthly payments at 2020 EAST KIMBERLY ROAD, DAVENPORT, IOWA 52807

or at a different place if required by the Note Holder.

**(B) Minimum Payment**

As of the date of the Note, my "Minimum Payment" of principal and interest is $1,639.18         . This amount will remain the same for the first 24 monthly payments due under the Note. Thereafter, my Minimum Payment is subject to change as described in detail, below. Notwithstanding the payment options set forth in Section 3(E) below, I must make at least the Minimum Payment each month.

**(C) Additions/Reductions to My Unpaid Principal**

My Minimum Payment may be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe in full on the Maturity Date in substantially equal payments. If this occurs, each month that my Minimum Payment is less than the interest portion, the Note Holder will subtract the amount of that payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to principal will be the rate set forth in Section 2 of the Note.

DocMagic 800-649-1362
www.docmagic.com

**(D) Payment Changes**

My Minimum Payment will change under the following circumstances:

> **(i)** **Payment Change Dates.** My monthly Minimum Payment may change on the 1st day of APRIL, 2008 , and on that same day every 12th month thereafter. Each of these dates is called a "Payment Change Date." Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal in full on the Maturity Date in substantially equal installments at my new interest rate calculated pursuant to Section 2(E) above. My new monthly Minimum Payment will be set equal to the recalculated amount except that my new Minimum Payment will not be more than 7.500 percent greater or less than the amount of the last monthly payment that was due before the applicable Payment Change Date.

> **(ii)** **Adjustment Dates.** Notwithstanding Section 3(D)(i) above, on the 4th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, my Minimum Payment will be adjusted as explained above, except that the described 7.500 percent limitation will not apply.

> **(iii)** **Other Changes.** My monthly payment may also change as described in Section (F) below.

**(E) Payment Options**

Additional payment options, such as: (i) a fully-amortizing payment (i.e., a payment that would be sufficient to repay the unpaid principal balance in full on the Maturity Date in substantially equal installments at the current Fully Indexed Rate); (ii) an interest-only payment (i.e., a payment equal to the interest accrued on the principal balance at the Fully Indexed Rate); and, (iii) a 15-year amortization option, may, at the Note Holder's discretion, be shown on my monthly statement. These payment options are shown for my convenience and may change each month based on changes in the Index (as described in Section 2(D) of the Note) and changes in the amount of my principal balance. Although none of these optional payments is required, a timely payment made in accordance with any payment option shown on my monthly statement will be deemed to be in compliance with the terms of the Note. In all events, a payment option offered on my monthly statement will never be less than my Minimum Payment.

**(F) Payment Limitations**

In all events, my unpaid principal balance can never exceed a maximum of 110 percent of the principal amount I originally borrowed (the "Maximum Amount"). If, based upon the assumption that I will continue to make my current Minimum Payment, the Note Holder determines that making my current Minimum Payment will cause my unpaid principal balance to exceed the Maximum Amount; the Note Holder may calculate a new monthly Minimum Payment to prevent my principal balance from doing this. Thereafter, until otherwise changed in accordance with the terms of this Note, my new monthly Minimum Payment will be an amount that would be sufficient to repay my then unpaid principal balance in full on the Maturity Date at my applicable interest rate in substantially equal payments.

## 4. NOTICES OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my Minimum Payment before the effective date of any change. The notice will contain the interest rate or rates applicable to my loan for each month since the prior notice or, for the first notice, since the date of the Note, and the payment amount applicable to the loan. The notice will also include information required by law to be given to me, and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   FAILURE TO MAKE ADJUSTMENTS**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in the Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if it had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid principal.

**6.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

The Section of the Security Instrument titled "Transfer of the Property or Beneficial Interest in Borrower" is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Security Instrument. Lender shall also not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in the Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an Assumption Agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in the Security Instrument. Borrower will continue to be obligated under the Note and Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

Unofficial Document

ADJUSTABLE RATE RIDER (2 YEAR PAYMENT OPTION/
1 MONTH LIBOR INDEX/PAYMENT AND RATE CAPS)
06/01/05                                                  Page 4 of 5

DocMagic dPorms 800-649-1362
www.docmagic.com

Unifym.rdr

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

| | |
|---|---|
| KIMBERLY SPROTT (Seal) -Borrower | (Seal) -Borrower |
| (Seal) -Borrower | (Seal) -Borrower |
| (Seal) -Borrower | (Seal) -Borrower |

Unofficial Document

Unofficial Document

# EXHIBIT B

Unofficial
Document

When recorded, mail to:

10
mc

**SPECIALIZED LOAN SERVICING, LLC.**
Attn: Foreclosure Department
8742 LUCENT BLVD., SUITE 300
HIGHLANDS RANCH, COLORADO 80129

---

Trustee's Sale No: 03-FSL-98747

*FSL987470112000000*

### ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR VALLEY MORTGAGE & INVESTMENT, INC. (FN), by these presents, grants, bargains, sells, assigns, transfers and sets over unto U.S. Bank National Association, as Trustee relating to Chevy Chase Funding LLC Mortgage Backed Certificates Series 2006-2, all beneficial interest under that certain Deed of Trust dated 2/23/2006, and executed by KIMBERLY SPROTT, A SINGLE PERSON, as Grantor, to LAND TITLE AGENCY OF ARIZONA, as Trustee, and recorded on 2/28/2006, under Auditor s File No. 20060268677, of MARICOPA County, State of ARIZONA, and covering property more fully described on said Deed of Trust referred to herein.

Together with the Note or Notes therein described or referred to, the money due and to become due therein with interest, and all rights accrued or to accrue under said Deed of Trust.

1

Assn

Trustee's Sale No: 03-FSL-98747

Dated: _August 12, 2010_

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. AS NOMINEE FOR VALLEY
MORTGAGE & INVESTMENT, INC. (FN)

BY: _____

    Darren Bronaugh    **Vice President**
    **Name**                 **Title**

STATE OF ___Colorado___   )
                      ) ss.
COUNTY OF ___Douglas___  )

On _August 12, 2010_, before me, _____ **Colleen R. Peters**
personally appeared ___Darren Bronaugh___, _____, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and
that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted executed the instrument.

WITNESS my hand and official seal.

NOTARY PUBLIC in and for the State of
_Colorado_ , residing at: _Douglas Cty_
My commission expires: _05/11/2014_

2

# EXHIBIT C

Unofficial
Document

RECORDING REQUESTED BY
_____
WHEN RECORDED MAIL TO

REGIONAL TRUSTEE SERVICES CORPORATION
616 1st Avenue, Suite 500
Seattle, WA 98104

10
mc

# NOTICE OF TRUSTEE'S SALE
### Trustee's Sale No. 03-FSL-98747

The following legally described trust property will be sold, pursuant to the power of sale under that certain Deed of Trust originally granted for the benefit of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR VALLEY MORTGAGE & INVESTMENT, INC. (FN), recorded on 2/28/2006 as Instrument No. 20060268677, , in the office of the County Recorder of MARICOPA County, ARIZONA, at public auction to the highest bidder at IN THE COURTYARD, BY THE MAIN ENTRANCE OF THE SUPERIOR COURT BUILDING, 201 WEST JEFFERSON, in the City of PHOENIX, County of MARICOPA, ARIZONA, on November 16, 2010, at 12:00 PM:

> LOT 61A, OF A REPLAT OF A PORTION OF GRAYHAWK PARCEL 2A, 2B, 2C, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED IN BOOK 502 OF MAPS, PAGE 6. EXCEPT ALL OIL GAS AND OTHER HYDROCARBON SUBSTANCES, HELIUM OR OTHER SUBSTANCES OF A GASEOUS NATURE, COAL, METALS, MINERALS, FOSSILS, FERTILIZER OF EVERY NAME AND DESCRIPTION AND EXCEPT ALL URANIUM, THORIUM OR ANY OTHER MATERIAL WHICH IS OR MAY BE DETERMINED TO BE PECULIARLY ESSENTIAL TO THE PRODUCTION OF FISSIONABLE MATERIALS WHETHER OR NOT OF COMMERCIAL VALUE, AS SET FORTH IN SECTION 37-231, A.R.S.

The street address is purported to be:
   7650 EAST FLEDGLING DRIVE
   SCOTTSDALE, AZ 85255
TAX PARCEL NUMBER:      212-36-898 7
ORIGINAL PRINCIPAL BALANCE:      $607,700.00

NAME AND ADDRESS OF CURRENT BENEFICIARY
   U.S. Bank National Association, as Trustee relating to Chevy Chase Funding LLC Mortgage Backed Certificates
   Series 2006-2
   c/o SPECIALIZED LOAN SERVICING, LLC.
   8742 LUCENT BLVD., SUITE 300
   HIGHLANDS RANCH, COLORADO 80129
NAME AND ADDRESS OF ORIGINAL TRUSTOR
   KIMBERLY SPROTT, A SINGLE PERSON
   7650 EAST FLEDGLING DRIVE
   SCOTTSDALE, AZ 85255
NAME AND ADDRESS OF TRUSTEE
   CHRISTOPHER CHARLES REBHUHN
   c/o Regional Trustee Services Corporation
   616 1st Avenue, Suite 500
   Seattle, WA 98104

Dated:  8/16/2010

20100703963

CHRISTOPHER CHARLES REBHUHN
Successor Trustee

By_____

Manner of Trustee Qualification: Licensed Insurance Producer –
Qualified to act as Trustee pursuant to ARS 33-803(A)(4).

Trustee's Regulator:  Arizona Department of Insurance

STATE OF WASHINGTON )
                                                  ) ss.
COUNTY OF KING              )

    The foregoing instrument was acknowledged before me on ___08 -16 - 10___ by CHRISTOPHER
CHARLES REBHUHN.

_____
NOTARY PUBLIC
My commission expires: _01- 20 -14_

FOR INFORMATION PURSUANT TO ARS 33-809E, SEND YOUR WRITTEN REQUEST AND $20.00 TO CHRISTOPHER
CHARLES REBHUHN, C/O Regional Trustee Services Corporation, 616 1st Avenue, Suite 500, Seattle, WA 98104.  SALE
INFORMATION:  (206) 340-2550 or http://www.rtrustee.com.

Unofficial Document



AZ NOTS

# EXHIBIT D

Unofficial
Document

RECORDING REQUESTED BY

10
ch

WHEN RECORDED MAIL TO

SPECIALIZED LOAN SERVICING, LLC.
8742 LUCENT BLVD., SUITE 300
HIGHLANDS RANCH, CO 80129

Trustee Sale No. 03-FSL-96747

## TRUSTEE'S DEED

Exempt from Affidavit of Property Value pursuant to ARS 11-1134 B1

**CHRISTOPHER CHARLES REBHUHN**, as the duly appointed Trustee under the Deed of Trust hereinafter described, does hereby grant and convey, but without covenant or warranty, express or implied, to: U.S. Bank National Association, as Trustee relating to Chevy Chase Funding LLC Mortgage Backed Certificates Series 2006-2, 8742 LUCENT BLVD., SUITE 300, HIGHLANDS RANCHCO 80129USA

Herein called GRANTEE, all of its right, title and interest in and to that certain property situate in the City of SCOTTSDALE, County of MARICOPA, State of ARIZONA, described as follows:

LOT 61A, OF A REPLAT OF A PORTION OF GRAYHAWK PARCEL 2A, 2B, 2C, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED IN BOOK 502 OF MAPS, PAGE 6. EXCEPT ALL OIL GAS AND OTHER HYDROCARBON SUBSTANCES, HELIUM OR OTHER SUBSTANCES OF A GASEOUS NATURE, COAL, METALS, MINERALS, FOSSILS, FERTILIZER OF EVERY NAME AND DESCRIPTION AND EXCEPT ALL URANIUN, THORIUM OR ANY OTHER MATERIAL WHICH IS OR MAY BE DETERMINED TO BE PECULIARLY ESSENTIAL TO THE PRODUCTION OF FISSIONABLE MATERIALS WHETHER OR NOT OF COMMERCIAL VALUE, AS SET FORTH IN SECTION 37-231, A.R.S.

TAX PARCEL NO:      212-36-898 7

This conveyance is made pursuant to the power of sale conferred upon TRUSTEE by that certain Deed of Trust executed by KIMBERLY SPROTT, A SINGLE PERSON, as Trustors recorded 2/28/2006 , as Instrument No. 20060268677, of Official Records in the office of the Recorder of MARICOPA County, State of ARIZONA, and after fulfillment by the Trustee of the conditions as specified in said Deed of Trust and in compliance with the laws of the State of Arizona.

Said property was sold by said Trustee at public auction on November 16, 2010, at the place named in the Notice of Trustee's Sale, in the County of MARICOPA, ARIZONA, in which the property is situated. Grantee, being the highest bidder at such sale, became the purchaser of said property and made payment therefore to said Trustee of the amount bid, namely $441,686.78.

AZ TRUSTEES DEED

Date: 11/18/10

CHRISTOPHER CHARLES REBHUHN, Trustee

By _____

STATE OF __WA__ )
                       ) ss.
COUNTY OF __King__ )

On 11/18/10  before me, the undersigned, a Notary Public in and for said state, duly commissioned and sworn, personally appeared CHRISTOPHER CHARLES REBHUHN, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person who executed the within instrument, and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC in and for the State of __WA__
residing at: __Seattle__
My commission expires:   07/09/14

Unofficial Document



AZ TRUSTEES DEED

# EXHIBIT E

Kim Sproutt
300 N. State Street – Apt. 2709
Chicago, IL 60654


April 4, 2016


Experian
NCAC
PO Box 9701
Allen, TX 75013

Re:   Name: Kim Sproutt
      Social Security #: ████ 8846
      DOB: ██████
      Report Date: 01/18/2016
      Report #: 1618-0766-76

To Whom It May Concern,

I am writing to dispute the following information in my file. I have attached the items I dispute on the enclosed copy of the credit report I received.

This item Specialized Loan Service #100469xxxx is incorrectly reporting a foreclosure date of November 2015, as well as a foreclosure dated November 2010. The November 2015 date is incorrect. The correct date for the foreclosure is November 2010. Please see attached Trustee's Deed reflecting the true date of the foreclosure.

Please investigate this matter and correct the disputed item as soon as possible.


Sincerely,

Kim Sprott

1/18/18, 1:51 PM

# Online Personal Credit Report

## What if I want to dispute an item in my report?

Review each section of your credit report. Visit experian.com/disputes to start or check the status of your dispute.

## Report Summary:

- There are 8 potentially negative items in your report.
- You have 14 accounts in good standing in your report.

Experian credit report prepared for
**KIM SPROTT**
Report date: January 18, 2018
Your report number is
**1618-0766-76**

**Your Credit Report:**
- Potentially negative items
- Accounts in good standing
- Requests for your credit history
- Personal information
- Important message from Experian
- Contact us
- Know your rights

Experian collects and organizes information about you and your credit history from public records, your creditors and other reliable sources. By law, we cannot disclose certain medical information (relating to physical, mental, or behavioral health or condition). Although we do not generally collect such information, it could appear in the name of a data furnisher (i.e., "Cancer Center") that reports your payment history to us. If so, those names display in your report, but in reports to others they display only as "Medical Information Provider." Consumer statements included on your report at your request that contain medical information are disclosed to others.

Experian – Report Summary

1/18/16, 1:51 PM

## SPECIALIZED LOAN SERVIC[

**Address:**
8742 LUCENT BLVD STE 300
HIGHLANDS RANCH, CO 80129
(720) 241-7200

**Account Number:**
100469....

**Address Identification Number:**
041449I225

**Status:** Foreclosed.

**Status Details:** This account is scheduled to continue on record until Feb 2017.

| Date Opened: | 02/2008 | **Type:** Mortgage |
| Reported Since: | 08/2010 | **Terms:** 40 Years |
| Date of Status: | 11/2010 | **Monthly Payment:** $0 |
| Last Reported: | 11/2015 | **Responsibility:** Individual |

**Credit Limit/Original Amount:** $947,267
**High Balance:** NA
**Recent Balance:** $0 as of 11/2015
**Recent Payment:** $0

**Payment History:**

2015
NOV OCT SEP AUG JUL JUN MAY APR MAR FEB JAN

2014
DEC NOV OCT SEP AUG JUL JUN MAY APR MAR FEB JAN

2013
DEC NOV OCT

OCT SEP AUG JUL JUN MAY APR MAR FEB JAN

2012
DEC NOV OCT SEP AUG JUL JUN MAY APR MAR FEB JAN

2011
DEC NOV OCT

SEP AUG JUL JUN MAY APR MAR FEB JAN

2010
DEC NOV OCT SEP AUG JUL JUN

**Account History:**
Foreclosure as of Nov 2015, Nov 2010
180 days past due as of Oct 2010
150 days past due as of Sep 2010
120 days past due as of Aug 2010
90 days past due as of Jul 2010
60 days past due as of Jun 2010

Unofficial
20Document

RECORDING REQUESTED BY

10
ch

WHEN RECORDED MAIL TO

SPECIALIZED LOAN SERVICING, LLC.
8742 LUCENT BLVD., SUITE 300
HIGHLANDS RANCH, CO 80129

Trustee Sale No. 03-FSL-98747

# TRUSTEE'S DEED

### Exempt from Affidavit of Property Value pursuant to ARS 11-1134 B1

CHRISTOPHER CHARLES REBHUHN, as the duly appointed Trustee under the Deed of Trust hereinafter described, does hereby grant and convey, but without covenant or warranty, express or implied, to: U.S. Bank National Association, as Trustee relating to Chevy Chase Funding LLC Mortgage Backed Certificates Series 2006-2, 8742 LUCENT BLVD., SUITE 300, HIGHLANDS RANCHCO 80129USA

Herein called GRANTEE, all of its right, title and interest in and to that certain property situate in the City of SCOTTSDALE, County of MARICOPA, State of ARIZONA, described as follows:

> LOT 61A, OF A REPLAT OF A PORTION OF GRAYHAWK PARCEL 2A, 2B, 2C, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED IN BOOK 602 OF MAPS, PAGE 6. EXCEPT ALL OIL GAS AND OTHER HYDROCARBON SUBSTANCES, HELIUM OR OTHER SUBSTANCES OF A GASEOUS NATURE, COAL, METALS, MINERALS, FOSSILS, FERTILIZER OF EVERY NAME AND DESCRIPTION AND EXCEPT ALL URANIUM, THORIUM OR ANY OTHER MATERIAL WHICH IS OR MAY BE DETERMINED TO BE PECULIARLY ESSENTIAL TO THE PRODUCTION OF FISSIONABLE MATERIALS WHETHER OR NOT OF COMMERCIAL VALUE, AS SET FORTH IN SECTION 37-231, A.R.S.

> TAX PARCEL NO:    212-36-896 7

This conveyance is made pursuant to the power of sale conferred upon TRUSTEE by that certain Deed of Trust executed by KIMBERLY SPROTT, A SINGLE PERSON, as Trustors recorded 2/28/2006 , as Instrument No. 20060268677,  of Official Records in the office of the Recorder of MARICOPA County, State of ARIZONA, and after fulfillment by the Trustee of the conditions as specified in said Deed of Trust and in compliance with the laws of the State of Arizona.

Said property was sold by said Trustee at public auction on November 16, 2010, at the place named in the Notice of Trustee's Sale, in the County of MARICOPA, ARIZONA, in which the property is situated. Grantee, being the highest bidder at such sale, became the purchaser of said property and made payment therefore to said Trustee of the amount bid, namely $441,666.76.

Unofficial
₂₀Document

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

REGIONAL TRUSTEE SERVICES CORPORATION
616 1st Avenue, Suite 500
Seattle, WA 98104

10
mc

## NOTICE OF TRUSTEE'S SALE
### Trustee's Sale No. 03-FSL-95747

The following legally described trust property will be sold, pursuant to the power of sale under that certain Deed of Trust originally granted for the benefit of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR VALLEY MORTGAGE & INVESTMENT, INC. (FN), recorded on 2/28/2006 as Instrument No. 20060268677, , in the office of the County Recorder of MARICOPA County, ARIZONA, at public auction to the highest bidder at IN THE COURTYARD, BY THE MAIN ENTRANCE OF THE SUPERIOR COURT BUILDING, 201 WEST JEFFERSON, in the City of PHOENIX, County of MARICOPA, ARIZONA, on November 16, 2010, at 12:00 PM:

> LOT 61A, OF A REPLAT OF A PORTION OF GRAYHAWK PARCEL 2A, 2B, 2C, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED IN BOOK 502 OF MAPS, PAGE 6. EXCEPT ALL OIL GAS AND OTHER HYDROCARBON SUBSTANCES, HELIUM OR OTHER SUBSTANCES OF A GASEOUS NATURE, COAL, METALS, MINERALS, FOSSILS, FERTILIZER OF EVERY NAME AND DESCRIPTION AND EXCEPT ALL URANIUM, THORIUM OR ANY OTHER MATERIAL WHICH IS OR MAY BE DETERMINED TO BE PECULIARLY ESSENTIAL TO THE PRODUCTION OF FISSIONABLE MATERIALS WHETHER OR NOT OF COMMERCIAL VALUE, AS SET FORTH IN SECTION 37-231, A.R.S.

The street address is purported to be:
7650 EAST FLEDGLING DRIVE
SCOTTSDALE, AZ 85255
TAX PARCEL NUMBER:      212-36-898 7
ORIGINAL PRINCIPAL BALANCE:      $607,700.00

NAME AND ADDRESS OF CURRENT BENEFICIARY
U.S. Bank National Association, as Trustee relating to Chevy Chase Funding LLC Mortgage Backed Certificates Series 2006-2
c/o SPECIALIZED LOAN SERVICING, LLC.
8742 LUCENT BLVD., SUITE 300
HIGHLANDS RANCH, COLORADO 80129
NAME AND ADDRESS OF ORIGINAL TRUSTOR
KIMBERLY SPROTT, A SINGLE PERSON
7650 EAST FLEDGLING DRIVE
SCOTTSDALE, AZ 85255
NAME AND ADDRESS OF TRUSTEE
CHRISTOPHER CHARLES REBHUHN
c/o Regional Trustee Services Corporation
616 1ˢᵗ Avenue, Suite 500
Seattle, WA 98104

Dated: 8/16/2010

# EXHIBIT F

Prepared for: KIM SPROTT
Date: April 28, 2016
Report number: 3771-2517-97

Experian
A world of insight

Dear KIM SPROTT:

*To assist you in understanding your correction summary, we have provided additional information that relates directly to items on your personal credit report.*

SPECIALIZED LOAN SERVICI
100469.....
PLEASE REFER TO YOUR CREDIT REPORT FOR UPDATE.

According to the Fair Credit Reporting Act (FCRA), a national consumer credit reporting agency's role in the dispute process is to review the accuracy and completeness of any disputed item which may include contacting the furnisher of the information or the vendor that collected the information from a public record source, such as a court or other government office, notifying them of the disputed information and disclosing all relevant information regarding the consumer's dispute. In order to help resolve the consumer's dispute, Experian will review all relevant documents submitted by the consumer with the dispute and will forward such documents to the furnisher if Experian is unable to resolve the issue based on those documents. Consumers may also contact creditors directly to dispute items reported by the creditor. If the issue is not resolved, then the consumer credit reporting agency must offer to include a consumer statement on the personal credit report.

A national consumer credit reporting agency stores information from credit grantors, collection companies as well as public record information that includes bankruptcies, judgments and liens.

Accurate information cannot be deleted. Potentially negative information, such as late payments and most public record items, which are obtained from courts and other government offices, remain on the personal credit report for up to seven years from the date of the original missed payment, with the exception of Chapters 7, 11 and 12 bankruptcies, which remain for up to 10 years. Unpaid tax liens will remain for 10 years from the filing date, and paid tax liens will remain for seven years from the filing date.

Positive information may remain on the report indefinitely, although paid closed accounts generally display for up to 10 years from the date paid or closed. Requests for your credit history remain on your personal credit report for at least two years.

If you believe the information in your personal credit report is inaccurate, you may submit a dispute to us. If any item of information is found inaccurate, incomplete or cannot be verified through our dispute process, we will then delete that information, or modify that information, as appropriate.



Scan me with your smart phone for special offers from Experian.

0206277530

Կ|լ|լ|Կ|լ|լ||||||Կ|լ|լ|ւ|Կ|լ|լ|լ|լ|ւ||||Կ|||ՈՒ|լ|||Կ|||||Ո.

CHICAGO IL 60610-2691
1615 N WELLS ST UNIT 4C
KIM SPROTT
0000142 m MB 0.416 °AUTO° 40.7102 60610.259143   -C02-P051481

PO Box 9701
Allen, TX 76013



7102-02-00-0005742-0003-0050099

## :::Experian·
A world of insight

Prepared for: KIM SPROTT
Date: April 28, 2016
Report number: 3771-2517-97

Page 5 of 16

Your accounts that may be considered negative (continued)

| SPECIALIZED LOAN SERVICI | Date opened | Type | Credit limit or | Recent balance | Responsibility |
|---|---|---|---|---|---|
| 8742 LUCENT BLVD STE 300, | Feb 2006 | Mortgage | original amount | $0 as of Nov 2015 | Individual |
| HIGHLANDS RANCH CO 80129 | First reported | Terms | $647,257 | | Status |
| Phone number | Jun 2010 | 40 Years | High balance | | Foreclosed, |
| (720) 241-7200 | Date of status | Monthly | Not reported | | This account is scheduled to continue on record until Feb |
| Partial account number | Nov 2010 | payment | | | 2017. |
| 100460 | | Not reported | | | |
| Address identification number | | | | | |
| 0414491225 | | | | | |

0208277530

**Experian**
A world of insight

Prepared for: KIM SPROTT
Date: April 28, 2016
Report number: 3771-2517-97

Page 6 of 16

Your accounts that may be considered negative (continued)

**Payment History**

**2015**
NOV OCT SEP AUG JUL JUN MAY APR MAR FEB JAN DEC NOV OCT SEP AUG JUL JUN MAY APR MAR FEB JAN DEC NOV OCT SEP AUG JUL JUN

**2014**
NOV OCT SEP AUG JUL JUN MAY APR MAR FEB JAN DEC NOV OCT SEP AUG JUL JUN MAY APR MAR FEB JAN DEC NOV OCT SEP AUG JUL JUN

**2013**
NOV OCT SEP AUG JUL JUN MAY APR MAR FEB JAN DEC NOV OCT SEP AUG JUL JUN

**2012**
JAN DEC NOV OCT SEP AUG JUL JUN

**2011**
MAY APR MAR FEB JAN DEC NOV OCT SEP AUG JUL JUN MAY APR MAR FEB JAN DEC NOV OCT SEP AUG JUL JUN

**2010**
JAN DEC NOV OCT SEP AUG JUL JUN

0206277530

McDOWELL MOUNTAIN
JUSTICE COURT
FILED

16 AUG 29  AM 8: 52

1 | **MCCARTHY LAW PLC**
CANDID CONVERSATION. WISE COUNSEL.

2 | Kevin Fallon McCarthy, 011017
Joon N. Kee, 028152
3 | Devan E. Michael, 032803
4250 North Drinkwater Blvd, Suite 320
4 | Scottsdale, AZ 85251
602-456-8900
5 | devan.michael@mccarthylawyer.com
joon.kee@mccarthylawyer.com
6 | Attorneys for Plaintiffs

7 | **McDOWELL MOUNTAIN JUSTICE COURT**
**MARICOPA COUNTY, STATE OF ARIZONA**
8 | 18380 NORTH 40TH STREET, PHOENIX, ARIZONA 85032

9 | KIMBERLY SPROTT,        Case No.: CC2016154186

10 |        Plaintiffs,        **INITIAL DISCOVERY SET TO**
**SPECIALIZED LOAN SERVICING,**
11 | v.        **LLC.**

12 | SPECIALIZED LOAN SERVICING, LLC
AND  EXPERIAN INFORMATION
13 | SOLUTIONS, INC.,

14 |        Defendants.

15 |        Plaintiff, KIMBERLY SPROTT, gives notice of service upon and requests that Defendant

16 | individually respond to the following interrogatories, requests for production, and requests for

17 | admission within sixty (60) days of service.

18 | ## PREFATORY INSTRUCTIONS TO INTERROGATORIES

19 |        The Justice Court Rules of Civil Procedure allow a party to send up to forty (40)
20 | interrogatories to another party. An interrogatory is a written question that is sent by a party to
another party that must be answered in writing and under oath by the party to whom the
21 | interrogatory is sent. If you do not answer an interrogatory because you object to the interrogatory,
you must state a reason for your objection.

22 |        Provide your answers in the space directly below each question. If there is not enough space
for your answer to a particular question, you may continue on a blank page by including the
23 | question above your answer. After you have completed your response to the interrogatories, you
must sign on the last page to affirm that you have truthfully answered the questions and that you
24 | have a good faith basis for any objections that you may have made. You must provide your original
25 | answers to interrogatories to the party who sent them to you, and you must provide a copy to every
other party in the lawsuit.

26 |        Your response to these interrogatories is due forty (40) days after they have been served
on you, unless the interrogatories were served with the summons and complaint, in which case
27 | your response is due within sixty (60) days after the date of service, or unless otherwise ordered by
28 | the court. If you do not answer these interrogatories by the date provided in this notice, the party

CCARTHY LAW, PLC
250 N. DRINKWATER BLVD
UITE 320
COTTSDALE, ARIZONA 85251
02-456-8900

Sprott v. Specialized Loan Servicing, LLC. et al.1                    DISCOVERY

1    who served them may file a motion asking that the court order you to answer them. If the court enters that order, the court may also require you to pay expenses, including attorneys' fees incurred

2    by the other party in obtaining the order. If you fail to comply with the order, the other party may
3    ask the court to impose additional penalties against you, including: that you may not introduce evidence of some or all or your claims or defenses in this lawsuit; if you are a plaintiff, that your
4    lawsuit be dismissed; or if you are a defendant, that judgment be entered against you by default.

5    All information is to be divulged which is in the possession of the individual or corporate party, his attorneys, investigators, agents, employees, or other representatives of the named party.
6

7    When an individual interrogatory calls for an answer that involves more than one party, each part of the answer should clearly set out so that it is understandable.

8
                                                    **DEFINITIONS**
9
10    When the terms "you," "Plaintiff" or "Defendant" are used, they are meant to include every individual party and include your agents, employees, your attorneys, your accountants, your investigators, anyone else acting on your behalf. Separate answers should be given for each person
11    named as the party, if requested.

12    When the term "document" is used, it is meant to include every "writing", "recording" and
13    "photograph' as those terms are defined in Rule 1001, Ariz.R.Evid. For each "document" responsive to any request withheld from production by you on the ground of any privilege, please
14    state:

15         (a)    the nature of the document (e.g., letter, memorandum, contract, etc.);

16         (b)    the author or sender of the document;

17         (c)    the recipient of the document;

18         (d)    the date the document was authored, sent, and/or received; and

19         (e)    the reason such document is allegedly privileged.
20

21    Where the term "contract" is used, it is meant to mean or to include the contract between the parties to this action that is the subject of the pleadings.
22

23    Where the terms "claim" or "claims" are used, they are meant to mean or to include a demand, cause of action or assertion for something due or believed to be due.

24    Where the terms "defense" or "defenses" are used, they are meant to mean or to include any
25    justification, excuse, denial or affirmative defense in response to the opposing party's claim.

26    Where the term "negotiation(s)" is used, it is meant to mean or to include conversations, discussions, meetings, conferences and other written or verbal exchanges that relate to the contract.
27

28    Where the term "Audit Trail" is used, it is meant to mean or include a complete, detailed listing of each and every alteration, deletion, inquiry into, modification or other change to the credit

Sprott v. Specialized Loan Servicing, LLC. et al.2                    DISCOVERY

report or profile as maintained in recorded form, in the broadest sense, by "you". The listing should include the identity, address, employer and title of the person(s) taking the action, the identity, address, employer and title of the person(s) authorizing the action, a detailed explanation of the action taken, the date of the action, the means used to effect such action, the location of origin of the action and the reason the action was taken.

Where the term "data" is used, it is meant to mean or include the physical symbols in the broadest sense that represent information, regardless of whether the information is oral, written or otherwise recorded.

"Identify" means that you should state:

(a) any and all names, legal, trade or assumed;

(b) all addresses used; and

(c) all telephone and tele-fax numbers used.

"Person(s)" means any human being, sole proprietorship, limited partnership, partnership, association, group of human beings, other legal or de facto entity, or corporation, of whatever kind.

"Personal Identifiers" means a person's name or social security number or other unique data which identifies or is associated with a particular "person."

The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

## NON UNIFORM INTERROGATORIES

**INTERROGATORY NO. 1:** Please identify the names, addresses, and telephone numbers of all persons who supplied information responsive to these interrogatories.

**ANSWER:**

**INTERROGATORY NO. 2:** Please identify the names, addresses, and telephone numbers of all persons who have personal knowledge of any of the facts, events, or matters that are alleged in Plaintiff's complaint, your answer, anticipated answer and/or defenses thereto and describe and explain your understanding of the matters on which the persons named have knowledge.

**ANSWER:**

Sprott v. Specialized Loan Servicing, LLC. et al.3                    DISCOVERY

1

2

3

**INTERROGATORY NO. 3:** Please identify all correspondence or documents that refer or relate

4

to any correspondence or communication between you and any other person relating or referring

5

to the facts, acts, events, or matters alleged in Plaintiff's complaint, or your answer, anticipated

6

answer and/or defenses thereto.

7

**ANSWER:**

8

9

10

**INTERROGATORY NO. 4:** Please identify each person whom you may call as a witness at trial

11

including name, address, and telephone number, and the substance of the facts and opinions to

12

which the witness may testify.

13

**ANSWER:**

14

15

16

**INTERROGATORY NO. 5:** Please list, explain and describe documents known to you or

17

believed by you to exist concerning the events described in Plaintiff's complaint or concerning any

18

event which is the subject of any defense you have raised to this lawsuit.

19

**ANSWER:**

20

21

22

23

**INTERROGATORY NO. 6:** Please identify each employee or non-employee witness or expert

24

witness you believe may have formed any opinion or consulted with you about the facts or basis

25

of this lawsuit or any defense or allegation you have raised in this lawsuit. For each such person

26

identified, please list each and every lawsuit in which that person has testified by affidavit,

27

deposition, trial testimony, or by report furnished to the court or opposing counsel. Please explain

28

and describe the nature of each such statement by the person so identified. Please identify the

Sprott v. Specialized Loan Servicing, LLC. et al.4                    DISCOVERY

1  lawsuit by complete caption, court name, cause number, and date the affidavit, deposition, trial

2  testimony, or report was made, taken or occurred.

3  **ANSWER:**

4

5

6  **INTERROGATORY NO. 7:** Please identify all individuals known to you or your attorney who

7  are not witnesses, but who you have reason to believe have knowledge pertinent to the events at

8  issue as alleged in the pleadings, and provide a brief summary of the facts to which each such

9  person could testify. For each person, please state the following:

10       a.       Please state whether each such person is affiliated with, or related

11            to, or employed by any party (or its agents, servants, officers, or employees)

12            to this lawsuit;

13       b.       If any of the persons so listed in response to this interrogatory do not

14            fit the characterization in subpart (a) above, please describe the nature of

15            their involvement in this lawsuit;

16       c)       Please explain and describe your understanding of their knowledge

17            of such facts.

18  **ANSWER:**

19

20

21  **INTERROGATORY NO. 8:** Please state whether any of the individuals listed in the answers to

22  the preceding interrogatories have given any statement[s] to you and, if so, please identify the

23  individual giving the statement, identify the individual to whom the statement was given, the date

24  of the statement, and whether or not the statement was written or recorded and, if it was written or

25  recorded, identify the individual presently in possession of such writing or recording.

26

27  ///

28  **ANSWER:**

Sprott v. Specialized Loan Servicing, LLC. et al.5                    DISCOVERY

1

2

3 **INTERROGATORY NO. 9:**  Please list each exhibit which you may attempt to introduce as

4 evidence at the trial of this case, or which has been used or referred to by any witness, expert or

5 lay, on your behalf.

6 **ANSWER:**

7

8

9 **INTERROGATORY NO. 10:** For each paragraph of Plaintiff's complaint which you deny the

10 allegations, please explain and describe any facts which you believe support each denial.

11 **ANSWER:**

12

13

14 **INTERROGATORY NO. 11:**  Please explain and describe when, how and under what

15 circumstances you archive, retain or capture account data in any file bearing any of Plaintiffs'

16 personal identifiers. List the archived data files and reports wherein any personal information about

17 Plaintiff or attributed to any of Plaintiff's personal identifiers, including the date such data was

18 captured, retained and/or archived, who has possession of those reports, the manner in which the

19 reports are maintained, and the retention policy[ies] regarding those reports. This request includes

20 your normal data file retention processes.

21 **ANSWER:**

22

23

24 **INTERROGATORY NO. 12:**  Please explain and describe when and how you transmit account

25 data stored in any file bearing any of Plaintiff's personal identifiers to any Consumer Reporting

26 Agency ("CRA").

27 ///

28 **ANSWER:**

Sprott v. Specialized Loan Servicing, LLC. et al.6                                    DISCOVERY

1

2

3   **INTERROGATORY NO. 13:** Please explain and describe any disputes you received from

4   Plaintiff or concerning Plaintiff and explain and describe your actions and disposition of your

5   actions in connection with each contact or communication.

6   **ANSWER:**

7

8

9   **INTERROGATORY NO. 14:** Please explain and describe each Consumer Dispute Verification

10   or Automated Consumer Dispute Verification ("CDV" or "ACDV" respectively) communication

11   or other dispute communication you issued to any furnisher of credit information which pertained

12   to Plaintiff or any of his/her personal identifiers. For each such CDV, ACDV or other dispute

13   communication, please identify the person reporting such dispute, state the date the dispute was

14   received and the date you issued any response, explain and describe the dispute conveyed, and fully

15   explain and describe your response[s] on each such occasion.

16   **ANSWER:**

17

18

19   **INTERROGATORY NO. 15:** Please list, explain and describe each and every code contained in

20   each reinvestigation record and file and retained computer record and screen/file you generated

21   and accessed regarding Plaintiff. For each such code, please also explain and describe, in detail,

22   the purpose of such code, the content of such action, the duration of such action, and the reason

23   you permitted such action or entry.

24   **ANSWER:**

25

26

27   ///

28   **PREFATORY INSTRUCTIONS TO REQUEST FOR PRODUCTION**

CCARTHY LAW, PLC
250 N. DRINKWATER BLVD
UITE 320
COTTSDALE, ARIZONA 85251
02.456.9900

Sprott v. Specialized Loan Servicing, LLC. et al.7                    DISCOVERY

The Justice Court Rules of Civil Procedure allow a party to request from another party up to ten (10) documents or items, or up to ten (10) categories of documents or items. If you do not produce a document or a category of documents or items because you object to a specific request, you must state a reason for your objection. A party may also request to enter on to designated land or other property to inspect it, or to take measurements, photographs, or samples.

A party who produces documents must provide them as they are kept in the usual course of business, or they must organize and label them in response to the requests. Electronic documents or electronic records must be produced in the format that has been requested or in the format that the electronic documents or records are usually kept.

You must provide your original response to requests under this rule to the party who sent them to you, and you must provide a copy to every other party in the lawsuit. Your response to requests made under this rule is due forty (40) days after the requests have been served on you, unless the requests were served with the summons and complaint, in which case your response is due within sixty (60) days after the date of service, or unless otherwise ordered by the court. If you do not comply with the requests that have been made in this notice, the party who served them may file a motion asking that the court order you to comply. If the court enters that order, the court may also require you to pay expenses, including reasonable attorneys' fees, incurred by the other party in obtaining the order. If you fail to comply with the order, the other party may ask the court to impose additional penalties against you, including: that you may not introduce evidence of some or all or your claims or defenses in this lawsuit; if you are a Plaintiff, that your lawsuit be dismissed; or if you are a defendant, that judgment be entered against you by default.

Each of the above-named parties is to produce for inspection and copying all documents in their possession or control or otherwise available to it/them that is/are responsive to the requests contained in the numbered paragraphs below. Each of the above-named parties shall specify which documents are produced in response to each of the numbered paragraphs.

If any document herein requested was formerly in the possession, custody, or control of each of the above-named parties and has been lost or destroyed, each of the above-named parties is requested to submit in lieu of each document a written statement which:

1. Describes in detail the nature of the document and its contents; AND

2. Identifies the person who prepared or authored the document and, if applicable, the person(s) to whom the document was sent; AND

3. Specifies the date on which the document was prepared or transmitted or both; AND

4. Specifies, if possible the date on which the document was lost or destroyed, and, if destroyed, the conditions or the reasons for such destruction and the persons requesting and performing the destruction.

If any document otherwise required to be produced by this request is withheld on the grounds of privilege or otherwise, you shall identify the document by document control number if available, or other sufficient information to identify the document and the reasons for the non-disclosure.

This request for production of documents is continuing and any document obtained or located subsequent to production, which would have been produced, had it been available or its existence known at the time is to be supplied forthwith.

Sprott v. Specialized Loan Servicing, LLC. et al.8                    DISCOVERY

## DEFINITIONS

1

2        When the terms "you," "Plaintiff" or "Defendant" are used, they are meant to include every
individual party and include your agents, employees, your attorneys, your accountants, your
3   investigators, anyone else acting on your behalf. Separate answers should be given for each person
named as the party, if requested.

4

5   When the term "document" is used, it is meant to include every "writing", "recording" and
"photograph' as those terms are defined in Rule 1001, Ariz.R.Evid. For each "document"
6   responsive to any request withheld from production by you on the ground of any privilege, please
state:

7
           (a)    the nature of the document (e.g., letter, memorandum, contract, etc.);
8
           (b)    the author or sender of the document;
9
           (c)    the recipient of the document;
10
           (d)    the date the document was authored, sent, and/or received; and
11
           (e)    the reason such document is allegedly privileged.
12

13       Where the term "contract" is used, it is meant to mean or to include the contract between
14   the parties to this action that is the subject of the pleadings.

15       Where the terms "claim" or "claims" are used, they are meant to mean or to include a
demand, cause of action or assertion for something due or believed to be due.
16

17       Where the terms "defense" or "defenses" are used, they are meant to mean or to include any
justification, excuse, denial or affirmative defense in response to the opposing party's claim.

18       Where the term "negotiation(s)" is used, it is meant to mean or to include conversations,
19   discussions, meetings, conferences and other written or verbal exchanges that relate to the contract.

20       Where the term "Audit Trail" is used, it is meant to mean or include a complete, detailed
listing of each and every alteration, deletion, inquiry into, modification or other change to the credit
21   report or profile as maintained in recorded form, in the broadest sense, by "you". The listing should
include the identity, address, employer and title of the person(s) taking the action, the identity,
22   address, employer and title of the person(s) authorizing the action, a detailed explanation of the
action taken, the date of the action, the means used to effect such action, the location of origin of
23   the action and the reason the action was taken.

24       Where the term "data" is used, it is meant to mean or include the physical symbols in the
25   broadest sense that represent information, regardless of whether the information is oral, written or
otherwise recorded.
26

27       "Identify" means that you should state:

28            (a) any and all names, legal, trade or assumed; AND

CCARTHY LAW, PLC
250 N. DRINKWATER BLVD
UITE 320
COTTSDALE, ARIZONA 85251
02-456-8900

Sprott v. Specialized Loan Servicing, LLC. et al.9                                          DISCOVERY

(b) all addresses used; AND

(c) all telephone and tele-fax numbers used.

"Person(s)" means any human being, sole proprietorship, limited partnership, partnership, association, group of human beings, other legal or de facto entity, or corporation, of whatever kind.

"Personal Identifiers" means a person's name or social security number or other unique data which identifies or is associated with a particular "person."

The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

## **REQUESTS FOR PRODUCTION**

**REQUEST NO. 1:**  Please produce a copy of all documents or computerized records, kept in any form or manner, known to you or believed by you to exist concerning any of the events described in Plaintiff's Complaint or concerning any of the events which are the subject[s] of any allegations, defense[s] or contentions you have raised to this lawsuit or in connection with this lawsuit.

**ANSWER:**

**REQUEST NO. 2:**  Please produce a complete and legible copy, transcription and summary of any statement[s], in any recorded format, provided to you or your attorneys in connection with any of the facts, asserted by any person, in this lawsuit and, if the witness produce any tangible item, please produce that item for inspection and copying at the time of your responses or produce a copy of that item with your responses.

**ANSWER:**

///

**REQUEST NO. 3:**

CCANTHY LAW, PLC
250 N. DRINKWATER BLVD
UITE 320
COTTSDALE, ARIZONA 85251
02-456-8900

Sprott v. Specialized Loan Servicing, LLC. et al.10                    DISCOVERY

1  Please produce a complete and legible copy of each exhibit which you may attempt to introduce as

2  evidence at the trial of this case.

3  **ANSWER:**

4

5

6  **REQUEST NO. 4:**  For each paragraph of Plaintiff's petition for which you deny the allegations,

7  please provide a copy of any evidence or proof which you believe may support each denial.

8  **ANSWER:**

9

10

11  **REQUEST NO. 5:**  Please produce a complete and legible copy of any communications you

12  received from Plaintiff and which you sent to Plaintiff.

13  **ANSWER:**

14

15

16

17

18

19

20

21

22

23

24

25

26

27  ///

28  **PREFATORY INSTRUCTIONS TO REQUEST FOR ADMISSION**

Sprott v. Specialized Loan Servicing, LLC. et al.11                                    DISCOVERY

The Justice Court Rules of Civil Procedure allow a party to send up to twenty-five (25) requests for admissions to another party. Each request must contain only one fact or one contention to admit or deny. A request may inquire about whether a document is genuine or accurate. You must admit or deny each of these requests, unless you object to a request, in which case you must state a reason for your objection. You may not object on the basis that you do not have knowledge or information concerning the request unless you have first made a reasonable inquiry to obtain knowledge or information.

You must provide your original response to requests under this rule to the party who sent them to you, and you must provide a copy to every other party in the lawsuit. Responses to requests for admissions are due forty (40) days from the date they are served, unless the requests were served with the summons and complaint, in which case your response is due within sixty (60) days after the date of service, or as ordered by the court.

If you do not respond to these requests for admissions by the date provided in this notice, your failure to respond may be considered as an admission of the requests.

## DEFINITIONS

When the terms "you," "Plaintiff" or "Defendant" are used, they are meant to include every individual party and include your agents, employees, your attorneys, your accountants, your investigators, anyone else acting on your behalf. Separate answers should be given for each person named as the party, if requested.

When the term "document" is used, it is meant to include every "writing", "recording" and "photograph' as those terms are defined in Rule 1001, Ariz.R.Evid. For each "document" responsive to any request withheld from production by you on the ground of any privilege, please state:

    (a)    the nature of the document (e.g., letter, memorandum, contract, etc.);

    (b)    the author or sender of the document;

    (c)    the recipient of the document;

    (d)    the date the document was authored, sent, and/or received; and

    (e)    the reason such document is allegedly privileged.

Where the term "contract" is used, it is meant to mean or to include the contract between the parties to this action that is the subject of the pleadings.

Where the terms "claim" or "claims" are used, they are meant to mean or to include a demand, cause of action or assertion for something due or believed to be due.

Where the terms "defense" or "defenses" are used, they are meant to mean or to include any justification, excuse, denial or affirmative defense in response to the opposing party's claim.

Where the term "negotiation(s)" is used, it is meant to mean or to include conversations, discussions, meetings, conferences and other written or verbal exchanges that relate to the contract.

CCARTHY LAW, PLC
250 N. DRINKWATER BLVD
UITE 320
COTTSDALE, ARIZONA 85251
02-456-8900

Sprott v. Specialized Loan Servicing, LLC. et al.12                  DISCOVERY

1   Where the term "Audit Trail" is used, it is meant to mean or include a complete, detailed listing of each and every alteration, deletion, inquiry into, modification or other change to the credit report or profile as maintained in recorded form, in the broadest sense, by "you". The listing should include the identity, address, employer and title of the person(s) taking the action, the identity, address, employer and title of the person(s) authorizing the action, a detailed explanation of the action taken, the date of the action, the means used to effect such action, the location of origin of the action and the reason the action was taken.

Where the term "data" is used, it is meant to mean or include the physical symbols in the broadest sense that represent information, regardless of whether the information is oral, written or otherwise recorded.

"Identify" means that you should state:

(a) any and all names, legal, trade or assumed; AND

(b) all addresses used; AND

(c) all telephone and tele-fax numbers used.

"Person(s)" means any human being, sole proprietorship, limited partnership, partnership, association, group of human beings, other legal or de facto entity, or corporation, of whatever kind.

"Personal Identifiers" means a person's name or social security number or other unique data which identifies or is associated with a particular "person."

The term "Consumer Reporting Agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**   Admit that you, Defendant, reported to one or more Consumer Reporting Agency ("CRA") account information bearing the personal identifier[s] of Plaintiff.

☐ADMIT  ☐DENY

**REQUEST FOR ADMISSION NO. 2:**   Admit that you, Defendant, failed to report to one or more CRA(s) that Plaintiff's account beginning in 100469 was foreclosed upon in November 2010.

☐ADMIT  ☐DENY

**REQUEST FOR ADMISSION NO. 3:**  Admit that you, Defendant, inaccurately reported to one

Sprott v. Specialized Loan Servicing, LLC. et al.13                          DISCOVERY

1   or more CRA(s) that Plaintiff's account beginning in 100469 was foreclosed upon November 2015,

2   five (5) years after the actual date of foreclosure.

3        ☐ADMIT  ☐DENY

4

5   **REQUEST FOR ADMISSION NO. 4:**  Admit that you, Defendant, failed to conduct an

6   investigation in response to a dispute received through one or more CRA(s) on Plaintiff's account

7   beginning in 100469.

8        ☐ADMIT  ☐DENY

9

10  **REQUEST FOR ADMISSION NO. 5:**  Admit that you, Defendant, failed to accurately report

11  data to one or more CRA(s) regarding Plaintiff's account beginning in 100469.

12       ☐ADMIT  ☐DENY

13

14      Respectfully submitted this 25th day of August, 2016.

15                    MCCARTHY LAW, PLC

16

17                    By:_____
                     Devan E. Michael, Esq.

18                    Kevin Fallon McCarthy, Esq.
                     Joon N. Kee, Esq.

19                    Attorneys for Plaintiff

20

21

22

23

24

25

26

27

28

9-2-16

McDOWELL MOUNTAIN
JUSTICE COURT
FILED

16 AUG 29  AM 8: 51

**M C C A R T H Y** **L A W   P L C**

CAUSED CONVERSATION.  WISE COUNSEL.

Kevin Fallon McCarthy, 011017
Joon N. Kee, 028152
Devan E. Michael, 032803
4250 North Drinkwater Blvd, Suite 320
Scottsdale, AZ 85251
602-456-8900
devan.michael@mccarthylawyer.com
joon.kee@mccarthylawyer.com
**Attorneys for Plaintiffs**

## McDOWELL MOUNTAIN JUSTICE COURT
## MARICOPA COUNTY, STATE OF ARIZONA
18380 NORTH 40TH STREET, PHOENIX, ARIZONA 85032

KIMBERLY SPROTT,

    Plaintiffs,

v.

SPECIALIZED LOAN SERVICING, LLC
AND EXPERIAN INFORMATION
SOLUTIONS, INC.,

    Defendants.

Case No.: CC2016154186

**SUMMONS**

**STATE OF ARIZONA TO:**

**SPECIALIZED LOAN SERVICING, LLC.**
**S/A: CT CORPORATION SYSTEM**
3800 NORTH CENTRAL AVENUE, SUITE 460
PHOENIX, ARIZONA 85012

**EXPERIAN INFORMATION SOLUTIONS, INC.**
**S/A: CT CORPORATION SYSTEM**
3800 NORTH CENTRAL AVENUE, SUITE 460
PHOENIX, ARIZONA 85012

**THE STATE OF ARIZONA TO THE ABOVE-NAMED DEFENDANT(S):**

1. YOU ARE SUMMONED to respond to this complaint by filing a written ANSWER with this

Court and by paying the required fee. If you cannot afford to pay the required fee, you may request

that the Court either waive or defer the fee.

MCCARTHY LAW, PLC
4250 N. DRINKWATER BLVD
SUITE 320
SCOTTSDALE, ARIZONA 85251
602-456-8900
WWW.MCCARTHYLAWYER.COM

Sprott v. Specialized Loan Servicing, LLC. et al. 1

Summons

1  2. If you were served with this summons in the State of Arizona, the Court must receive your

2  answer within twenty (20) calendar days from the date you were served. If you were served outside

3  the State of Arizona, the Court must receive your answer within thirty (30) calendar days from the

4  date you were served. If the last day is a Saturday, Sunday, or legal holiday, you will have until the

5  next working day to file your answer. When calculating time, do not count the day you were served

6  with the summons.

7  3. Your answer must be in writing.

8       (a) You may obtain an answer form from this Court.

9       (b) You may also obtain an answer form from the Form section of the Maricopa County

10  Justice Courts website at http://justicecourts.maricopa.gov.

11  4. Provide a copy of your answer to the Plaintiff(s) or to the Plaintiff's attorney in accordance with

12  JCRCP Rule 120.

13  **5. IF YOU FAIL TO FILE A WRITTEN ANSWER WITH THIS COURT WITHIN THE**

14  **TIME INDICATED ABOVE, A DEFAULT JUDGMENT MAY BE ENTERED AGAINST**

15  **YOU.**

16  The name and address of Plaintiffs' attorney is:

17
18                    Kevin Fallon McCarthy, Esq.
                      Devan E. Michael, Esq.
                      Joon N. Kee, Esq
19                    McCARTHY LAW PLC
                      4250 North Drinkwater Boulevard, #320
20                    Scottsdale, Arizona 85251

21
22  SIGNED AND SEALED this date: _____ 8-29-16 _____

23                                By: _____
                                  Deputy Clerk
24
25
26
27

McCARTHY LAW, PLC
4250 N. DRINKWATER BLVD
SUITE 320
SCOTTSDALE, ARIZONA 85251
602-456-8900
WWW.MCCARTHYLAWYER.COM

Sprott v. Specialized Loan Servicing, LLC. et al.2                              Summons

**NOTICE TO THE DEFENDANT: A LAWSUIT HAS BEEN FILED AGAINST YOU IN JUSTICE COURTS**

You have rights and responsibilities in this lawsuit. Read this notice carefully.

1. In a justice court lawsuit, individuals have a right to represent themselves, or they may hire an attorney to represent them. A family member or a friend may not represent someone in justice court unless the family member or friend is an attorney. A corporation has a right to be represented by an officer of the corporation, and a limited liability company ("LLC") may be represented by a managing member. A corporation or an LLC may also be represented by an attorney. If you represent yourself, you have the responsibility to properly complete your court papers and to file them when they are due. The clerks and staff at the court are not allowed to give you legal advice. If you would like legal advice, you may ask the court for the name and phone number of a local lawyer referral service, the local bar association, or a legal aid organization.

2. You have a responsibility to follow the Justice Court Rules of Civil Procedure ("JCRCP") that apply in your lawsuit. The rules are available in many public libraries, at the courthouse, and online at the Court Rules page of the Arizona Judicial Branch website, at http://www.azcourts.gov/, under the "AZ Supreme Court" tab.

3. A "plaintiff" is someone who files a lawsuit against a "defendant." You must file an answer or other response to the plaintiff's complaint in writing and within twenty (20) days from the date you were served with the summons and complaint (or thirty (30) days if you were served out-of-state.) If you do not file an answer within this time, the plaintiff may ask the court to enter a "default" and a "default judgment" against you. Your answer must state your defenses to the lawsuit. Answer forms are available at the courthouse, on the Maricopa County Justice Court website at http://justicecourts.maricopa.gov/, and on the Self-Service Center of the Arizona Judicial Branch website at http://www.azcourts.gov/ under the "Public Services" tab. You may also prepare your answer on a plain sheet of paper, but your answer must include the court location, the case number and the names of the parties. You must provide to the plaintiff a copy of any document that you file with the court, including your answer.

4. You may bring a claim against the plaintiff if you have one. When you file your answer or written response with the court, you may also file your "counterclaim" against the plaintiff.

5. You must pay a filing fee to the court when you file your answer. If you cannot afford to pay a filing fee, you may apply to the court for a fee waiver or deferral, but you must still file your answer on time.

6. You may contact the plaintiff or the plaintiff's attorney and try to reach an agreement to settle the lawsuit. However, until an agreement is reached you must still file your answer and participate in the lawsuit. During the lawsuit, the court may require the parties to discuss settlement.

7. Within forty (40) days after your answer has been filed, you and the plaintiff are required to provide a disclosure statement to each other. The disclosure statement provides information about witnesses and exhibits that will be used in the lawsuit. A party may also learn more about the other side's case through discovery. Read the Justice Court Rules of Civil Procedure for more information about disclosure statements and discovery.

8. The court will notify you of all hearing dates and trial dates. You must appear at the time and place specified in each notice. If you fail to appear at a trial or a hearing, the court may enter a judgment against you. To assure that you receive these notices, you must keep the court informed, in writing, of your current address and telephone number until the lawsuit is over.

McCARTHY LAW, PLC
4250 N. DRINKWATER BLVD
SUITE 320
SCOTTSDALE, ARIZONA 85251
602.456.8900
WWW.McCARTHYLAWYER.COM

Sprott v. Specialized Loan Servicing, LLC. et al.3                                    Summons

# NATIONAL REGISTERED AGENTS, INC

## SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM

To:  MAIN MAIL ROOM
      Specialized Loan Servicing, LLC
      8742 Lucent Blvd Ste 300
      Highlands Ranch, CO 80129-2386

SOP Transmittal #  **529784093**

602-248-1145 - Telephone

Entity Served:  Specialized Loan Servicing LLC  (Domestic State: DELAWARE)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc or its Affiliate in the State of ARIZONA on this 02 day of September, 2016. The following is a summary of the document(s) received:

1. **Title of Action:**  Kimberly Sprott, Pltf. vs. Specialized Loan Servicing LLC and Experian Information Solutions, Inc., Dfts.

2. **Document(s) Served:**  SUMMONS & COMPLAINT
   Other: Notice/Attachment(s)

3. **Court of Jurisdiction/Case Number:** Maricopa County - McDowell Mountain Precinct - Justice Court, AZ
   Case # CC2016154186

4. **Amount Claimed, if any:**  N/A

5. **Method of Service:**

   _X_ Personally served by:      _X_ Process Server      ___ Law Enforcement      ___ Deputy Sheriff      ___ U. S Marshall

   ___ Delivered Via:      ___ Certified Mail      ___ Regular Mail      ___ Facsimile

   ___ Other (Explain):

6. **Date and Time of Receipt:**   09/02/2016 11:00:00 AM CST

7. **Appearance/Answer Date:**  Within 30 days after the date you were served

8. **Received From:**  Devan E. Michael      9. **Federal Express Airbill #** 783994427788
   McCarthy Law, PLC
   4250 North Drinkwtaer Blvd.
   Suite 320      10. **Call Made to:** Not required
   Scottsdale, AZ 85251
   602-456-8900

11. **Special Comments:**
SOP Papers with Transmittal, via Fed Ex 2 Day

Image SOP

Email Notification,  MAIN MAIL ROOM  BRYAN.SULLIVAN@SLS.NET

Email Notification,  DAVID BURGESS  DAVID.BURGESS@SLS.NET

Email Notification,  MICHAEL MURRAY  MICHAEL.MURRAY@SLS.NET

Email Notification,  AMANDA DARBY  AMANDA.DARBY@SLS.NET

Email Notification,  SHAUNA ZAKRZEWSKI  SHAUNA.ZAKRZEWSKI@SLS.NET

Email Notification,  Linda Murray  Linda.Murray@sls.net

**NATIONAL REGISTERED AGENTS, INC**                    **CopiesTo:**

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc for informational purposes only and should not

be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

ORIGINAL

# NATIONAL REGISTERED AGENTS, INC

## SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM

To:  MAIN MAIL ROOM
     Specialized Loan Servicing, LLC
     8742 Lucent Blvd Ste 300
     Highlands Ranch, CO 80129-2386

SOP Transmittal #  **529784093**

602-248-1145 - Telephone

Entity Served:   Specialized Loan Servicing LLC  (Domestic State: DELAWARE)

Transmitted by   Issis Gonzalez

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc for informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

ORIGINAL



*2112684*

MCDOWELL MOUNTAIN
JUSTICE COURT
FILED

16 SEP 12 AM 8: 55

EZ Messenger
2502 N. BLACK CANYON HIGHWAY
PHOENIX, AZ 85009
602.258.8081
Fax#: 602.258.8864

In The MCDOWELL MOUNTAIN JUSTICE COURT
State of ARIZONA, County of MARICOPA

KIMBERLY SPROTT
Vs.
SPECIALIZED LOAN SERVICING, LLC AND EXPERIAN
INFORMATION SOLUTIONS, INC.

**Certificate of Service**

Case No.: CC2016154186
Court Date: N/A
Judge:

The undersigned certifies under penalty of perjury: That I am a private process server registered in **Maricopa County** and an officer of the court. On 09/02/2016 I received **SUMMONS; NOTICE TO THE DEFENDANT; COMPLAINT FOR VIOLATION OF FAIR CREDIT REPORTING ACT (15 U.S.C. 1681 ET SEQ.); EXHIBIT A-F; INTITAL DISCOVERY SET TO EXPERIAN INFORMATION SOLUTIONS, INC.** from **McCarthy Law PLC** and by **Kevin Fallon McCarthy.** In each instance I personally served copy(ies) of each document listed above upon: **EXPERIAN INFORMATION SOLUTIONS, INC. BY SERVICE UPON ITS STATUTORY AGENT CT CORPORATION SYSTEM**, by leaving with **Angela Ramirez**, Customer service representative, stated authorized to accept, at **3800 NORTH CENTRAL AVENUE SUITE 460** in **Phoenix, AZ 85012** in MARICOPA County, on 09/02/2016 at 11:00 AM.

Description of Person Accepting Service:
Sex: Female Race: Hispanic Age: 35 Height: 5ft 3in Weight: 160 Hair: Brown

Marriage Status: N/A

I declare, under penalty of perjury, that the foregoing is
true and correct. Executed on September 08, 2016

| | |
|---|---|
| SERVICE OF PROCESS | $    55.00 |
| TOTAL: | $    55.00 |

Client Ref: Sprott.K.11.50RML
Client: McCarthy Law PLC

MICHAEL CANDELARIA, MC-8552          Affiant



*2112589*

McDOWELL MOUNTAIN
JUSTICE COURT
FILED

16 SEP 12 AM 8: 55

EZ Messenger
2502 N. BLACK CANYON HIGHWAY
PHOENIX, AZ85009
602.258.8081
Fax#: 602.258.8864

In The MCDOWELL MOUNTAIN JUSTICE COURT
State of ARIZONA, County of MARICOPA

KIMBERLY SPROTT
Vs.
SPECIALIZED LOAN SERVICING, LLC AND EXPERIAN
INFORMATION SOLUTIONS, INC.

**Certificate of Service**

Case No.:CC2016154186
Court Date: N/A
Judge:

The undersigned certifies under penalty of perjury:That I am a private process server registered in Maricopa County and an officer of the court. On 09/02/2016 I received SUMMONS; NOTICE TO THE DEFENDANT; COMPLAINT FOR VIOLATION OF FAIR CREDIT REPORTING ACT (15 U.S.C. 1681 ET SEQ.); EXHIBIT A-F; INTITAL DISCOVERY SET TO SPECIALIZED LOAN SERVICING, LLC from McCarthy Law PLC and by Kevin Fallon McCarthy. In each instance I personally served copy(ies) of each document listed above upon: SPECIALIZED LOAN SERVICING, LLC BY SERVICE UPON ITS STATUTORY AGENT CT CORPORATION SYSTEM , by leaving with Angela Ramirez , Customer service representative, stated authorized to accept, at 3800 NORTH CENTRAL AVENUE SUITE 460 in Phoenix, AZ85012 in MARICOPA County, on 09/02/2016 at 11:00 AM.

Description of Person Accepting Service:
Sex: Female Race: Hispanic Age: 35 Height: 5ft 3in Weight: 160 Hair: Brown

Marriage Status: N/A

I declare, under penalty of perjury, that the foregoing is
true and correct. Executed on September 08, 2016

MICHAEL CANDELARIA, MC-8552          Affiant

SERVICE OF PROCESS          $    55.00

TOTAL:                      $    55.00

Client Ref: Sprott.K.11.150RML
Client: McCarthy Law PLC

# EXHIBIT 2

1    Kevin P. Nelson  (SBN 023381)
2    Michael J. Rogers (SBN 030592
     Michael A. Wrapp (SBN 031537)
3    **TB** T I F F A N Y & B O S C O
         P.A.
4    SEVENTH FLOOR CAMELBACK ESPLANADE II
     2525 EAST CAMELBACK ROAD
5    PHOENIX, ARIZONA 85016-4237
     TELEPHONE: (602) 255-6000
6    FACSIMILE:  (602) 255-0103
     EMAIL:  kpn@tblaw.com; mjr@tblaw.com; maw@tblaw.com
7    *Attorneys for Specialized Loan Servicing, LLC*

8              McDOWELL MOUNTAIN JUSTICE COURT
               MARICOPA COUNTY, STATE OF ARIZONA
9           18380 NORTH 40TH STREET, PHOENIX, ARIZONA 85032

10   KIMBERLY SPROTT,                    Case No. CC2016-154186

11          Plaintiffs,

12
     v.
13                                       **NOTICE OF REMOVAL TO
                                         FEDERAL COURT**
14   SPECIALIZED LOAN SERVICING, LLC
     AND EXPERIAN INFORMATION            (Assigned to the Honorable Michael
15   SOLUTIONS, INC.,                              Reagan)

16          Defendants.

17

18

19       **TO PLAINTIFF KIMBERLY SPROTT:**

20          PLEASE TAKE NOTICE that Defendant Specialized Loan Servicing, LLC filed a

21   Notice of Removal of this action in the United States District Court for the District of

22   Arizona on September 30, 2016.  A copy of the Notice of Removal (without exhibits) is

23   attached to this Notice as **Exhibit A** and is served contemporaneously herewith.

24   …

25   …

26   …

27   …

28   …

                                      -1-

DATED this 30th day of September, 2016.

TIFFANY & BOSCO
P.A.

By: _____
Kevin P. Nelson
Michael J. Rogers
Michael A. Wrapp
Seventh Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
*Attorneys for Specialized Loan Servicing, LLC*

**ORIGINAL** of the foregoing
filed this 30th day of September, 2016
with the Clerk of the McDowell Mountain
Justice Court.

**COPIES** of the foregoing e-mailed and mailed
this 30th day of September, 2016, to:

Kevin Fallon McCarthy
Joon N. Kee
Devan E. Michael
McCarthy Law PLC
4250 North Drinkwater Blvd., Suite 320
Scottsdale, AZ 85251
devan.michael@mccarthylawyer.com
joon.kee@mccarthylawyer.com
*Attorneys for Plaintiff*

Alexandria Fries
Jones Day
555 S. Flower Street 50th Floor
Los Angeles, CA 90071

Jonathan Dessaules
Dessaules Law Group
5353 N. 16th Street, Suite 110
Phoenix, AZ 85016
*Attorneys for Experian Information Solutions, Inc.*

By: _____

-2-

# EXHIBIT A

1    Kevin P. Nelson  (SBN 023381)
2    Michael J. Rogers (SBN 030592
     Michael A. Wrapp (SBN 031537)
3    **TB**  **T I F F A N Y & B O S C O**
           P.A.
4    SEVENTH FLOOR CAMELBACK ESPLANADE II
     2525 EAST CAMELBACK ROAD
5    PHOENIX, ARIZONA 85016-4237
     TELEPHONE: (602) 255-6000
6    FACSIMILE:  (602) 255-0103
     EMAIL:  kpn@tblaw.com; mjr@tblaw.com; maw@tblaw.com
7    *Attorneys for Specialized Loan Servicing, LLC*

8             **IN THE UNITED STATES DISTRICT COURT**

9                **FOR THE DISTRICT OF ARIZONA**

10   KIMBERLY SPROTT,                     Case No. _____

11            Plaintiffs,

12   v.                                   **NOTICE OF REMOVAL**

13   SPECIALIZED LOAN SERVICING, LLC      [Formerly McDowell Mountain Justice
14   AND EXPERIAN INFORMATION              Court Case No. CC2016-154186]
     SOLUTIONS, INC.,
15
16            Defendants.

17

18

19   TO:   **TO THE HONORABLE JUDGES AND**
20         **CLERK OF THE ABOVE-ENTITLED COURT**

21        **PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and

22   1446, and Local Rule 3.6 of the Local Rules of Civil Procedure for the United States

23   District Court for the District of Arizona, Defendant Specialized Loan Servicing, LLC

24   ("Specialized") hereby files this Notice of Removal ("Notice") of the state court civil

25   action filed against it that is described below.  The grounds for removal are as follows:

26        1.    Plaintiff Kimberly Sprott, with the filing of the Complaint, commenced this

27   action in the McDowell Mountain Justice Court, Maricopa County, State of Arizona, on

28

                                    -1-

August 29, 2016, in Case No. CC2016-154186, with the above caption (the "Justice Court Action").

2.     According to Certificates of Service filed in the Justice Court Action, Specialized and Defendant Experian Information Solutions, Inc. ("Experian") were served on September 2, 2016.

3.     Pursuant to 28 U.S.C. § 1446(a) and Local Rule 3.6, copies of all pleadings and other documents filed in the Justice Court Action are attached hereto as **Exhibit 1**.

4.     Pursuant to Local Rule 3.6, undersigned counsel for Specialized verifies that, to the best of his knowledge and belief, the documents attached as Exhibit 1 to this Notice are true and complete copies of all pleadings and other documents filed in the Justice Court Action.

5.     Removal is timely under 28 U.S.C. § 1446(b), because this Notice is filed within thirty (30) days after service on Specialized of a copy of the initial pleading. *Emerson v. Maricopa Cnty.*, No. CV 07-1047, 2007 WL 2288148, at *1–4 (D. Ariz. Aug. 8, 2007); *Hobbs v. Pacificorp*, No. CV 05-1906, 2006 WL 120325, at *2–4. (D. Ariz. Jan. 17, 2006).

6.     Under 28 U.S.C. § 1441, this Court is the appropriate forum in which to file this Notice because the United States District Court for the District of Arizona, Phoenix Division is the federal judicial district embracing Maricopa County, Arizona, the county in which the Justice Court Action was filed.

7.     The Justice Court Action involves a federal question claim arising under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*

8.     Under 28 U.S.C. § 1331, this Court has original jurisdiction over this claim because it arises under the Constitution, laws, or treaties of the United States.

9.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over all other claims in the Justice Court Action because they are so related to the claims over which this Court has original jurisdiction under 28 U.S.C. § 1331 that they form part of the same case or controversy.

10.     Pursuant to 28 U.S.C. § 1446 and Local Rule 3.6(a), counsel for Removing Defendants has given notice of this filing, together with a copy of this Notice, to the Clerk of the McDowell Mountain Justice Court, Maricopa County, State of Arizona, a copy of which is attached hereto as **Exhibit 2**.

11.     Undersigned counsel is counsel of record for Specialized, and avers to this Court that Specialized consents to removal.

12.     Experian also consents to removal.   A copy of Experian's consent is attached hereto as **Exhibit 3**.

13.     All properly served Defendants therefore consent to removal.

14.     WHEREFORE, Specialized respectfully requests that the Justice Court Action be removed to and proceed hereafter in this Court, and that no further proceedings be had in the McDowell Mountain Justice Court, Maricopa County, State of Arizona.

DATED this 30th day of September, 2016.

**TB** T I F F A N Y & B O S C O
P.A.

By: /s/ Michael J. Rogers
    Kevin P. Nelson
    Michael J. Rogers
    Michael A. Wrapp
    Seventh Floor Camelback Esplanade II
    2525 East Camelback Road
    Phoenix, Arizona 85016-4237
    *Attorneys for Specialized Loan Servicing, LLC*

-3-

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of September, 2016, I electronically transmitted the foregoing document and any attachments to the U.S. District Court Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

N/A

I hereby certify that on the 30th day of September, 2016, I mailed the foregoing document and any attachments to the following parties who are not CM/ECF registrants:

Kevin Fallon McCarthy
Joon N. Kee
Devan E. Michael
McCarthy Law PLC
4250 N. Drinkwater Blvd., Suite 320
Scottsdale, AZ 85251
*Attorneys for Plaintiff*

Alexandria Fries
Jones Day
555 S. Flower Street 50th Floor
Los Angeles, CA 90071

Jonathan Dessaules
Dessaules Law Group
5353 N. 16th Street, Suite 110
Phoenix, AZ 85016
*Attorneys for Experian Information Solutions, Inc.*

By:  /s/ Malorie Quinlan

# EXHIBIT 3

**From:**        Alexandra N Fries
**To:**          Michael J. Rogers
**Subject:**     Sprott v. Experian
**Date:**        Friday, September 30, 2016 1:15:03 PM

Mike,

You have Experian's consent to remove this case.

Thanks,
Alex

Alexandra Fries
Associate
**JONES DAY® - One Firm Worldwide℠**
555 South Flower Street Fiftieth Floor
Los Angeles, CA 90071-2300
Office +1.213.243.2360
afries@jonesday.com

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected
by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system
without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========